**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTY KOSTRO AND MICHAEL KOSTRO,<br><br>Plaintiffs,<br><br>v.<br><br>HYUNDAI MOTOR AMERICA, a foreign corporation; HYUNDAI MOTOR AMERICAN CORPORATION, a foreign corporation; and HYUNDAI MOTOR COMPANY, a foreign corporation;<br>John Doe Manufacturer 1;<br>John Doe Manufacturer 2;<br>John Doe Distributor 1;<br>John Doe Distributor 2;<br>John Doe Dealership;<br><br>Defendants, | : | CIVIL ACTION – LAW<br><br>**COMPLAINT**<br><br>Civil Action No. _______________<br><br>**JURY TRIAL DEMANDED** |

**NOTICE**

You have been sued in Court. If you wish to defend against the claims set forth in the following pages, you must take action within 20 days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the Court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so, the case may proceed without you and the Court without further notice may enter a judgment against you for any money claimed in the Complaint or for any other claim or relief requested by the Plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP:

Law Referral Legal Services
Lackawanna Bar Association
338 North Washington Avenue
3rd Floor
Scranton PA 18503
570-969-9600

Or

Northern Pennsylvania Legal services
507 Linden Street
3rd Floor
Scranton PA 18503
570-342-0184

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CHRISTY KOSTRO AND MICHAEL KOSTRO, | : | CIVIL ACTION – LAW |
| Plaintiffs, | : | **COMPLAINT** |
| v. | : | |
| HYUNDAI MOTOR AMERICA, a foreign corporation; HYUNDAI MOTOR AMERICAN CORPORATION, a foreign corporation; and HYUNDAI MOTOR COMPANY, a foreign corporation; John Doe Manufacturer 1; John Doe Manufacturer 2; John Doe Distributor 1; John Doe Distributor 2; John Doe Dealership; | : | Civil Action No. _______________ |
| Defendants, | : | **JURY TRIAL DEMANDED** |

**COMPLAINT**

AND NOW COMES Plaintiffs, Christy Kostro and Michael Kostro, by and through their attorneys The Pisanchyn Law Firm and their undersigned counsel and avers as follows:

1. Plaintiff, Christy Kostro, is a competent adult individual residing in Albrightsville, PA.

2. Plaintiff, Michael Kostro, is a competent adult individual residing in Albrightsville, PA.

3. Plaintiffs, Christy and Michael Kostro, are/were legally husband and wife at all times relevant to this litigation.

4. Defendant, Hyundai Motor America, is a corporation or other jural entity with a principal place of business of business in Fountain Valley, California, and is authorized to do business in the State of Pennsylvania and at the time of this incident was acting individually and/or through it/his/hers/their agents, servants and/or employees, who

were acting within the course and scope of their agency, service and/or employment with Defendant and does substantial and systematic business in Lackawanna, Luzerne, Carbon, and/or Philadelphia Counties. Service of process can be accomplished by serving the Summons and Original Complaint in duplicate by certified mail, return receipt requested, or in person on its Registered Agent located at: National Registered Agents, Inc., 116 Pine Street – Suite 320, Harrisburg, PA 17101 or 818 West Seventh Street – Suite 930, Los Angeles, California 90017.

5. Defendant, Hyundai Motor America Corporation, is a corporation or other jural entity with a principal place of business of business in Fountain Valley, California, and is authorized to do business in the State of Pennsylvania and at the time of this incident was acting individually and/or through it/his/hers/their agents, servants and/or employees, who were acting within the course and scope of their agency, service and/or employment with Defendant and does substantial and systematic business in Lackawanna, Luzerne, Carbon, and/or Philadelphia Counties. Service of process can be accomplished by serving the Summons and Original Complaint in duplicate by certified mail, return receipt requested, or in person on its Registered Agent located at: National Registered Agents, Inc., 116 Pine Street – Suite 320, Harrisburg, PA 17101 or 818 West Seventh Street – Suite 930, Los Angeles, California 90017.

6. Defendant, Hyundai Motor Company, is a corporation or other jural entity with a principal place of business of business in Fountain Valley, California, and is authorized to do business in the State of Pennsylvania and at the time of this incident was acting individually and/or through it/his/hers/their agents, servants and/or employees, who were acting within the course and scope of their agency, service and/or employment

with Defendant and does substantial and systematic business in Lackawanna, Luzerne, Carbon, and/or Philadelphia Counties. Service of process can be accomplished by serving the Summons and Original Complaint in duplicate by certified mail, return receipt requested, or in person on its Registered Agent located at: National Registered Agents, Inc., 116 Pine Street – Suite 320, Harrisburg, PA 17101 or 818 West Seventh Street – Suite 930, Los Angeles, California 90017.

7. Defendant, John Doe Manufacturer 1, is a corporation or other jural entity authorized to do business in the State of Pennsylvania manufacturing air bags and/or component parts and at the time of this incident was acting individually and/or through it/his/hers/their agents, servants and/or employees, who were acting within the course and scope of their agency, service and/or employment with Defendant and does substantial and systematic business in Lackawanna, Luzerne, Carbon, and/or Philadelphia Counties.

8. Defendant, John Doe Manufacturer 2, is a corporation or other jural entity authorized to do business in the State of Pennsylvania manufacturing air bags and/or component parts and at the time of this incident was acting individually and/or through it/his/hers/their agents, servants and/or employees, who were acting within the course and scope of their agency, service and/or employment with Defendant and does substantial and systematic business in Lackawanna, Luzerne, Carbon, and/or Philadelphia Counties.

9. Defendant, John Doe Distributor 1, is a corporation or other jural entity authorized to do business in the State of Pennsylvania distributing airbags and/or component parts and at the time of this incident was acting individually and/or through it/his/hers/their

agents, servants and/or employees, who were acting within the course and scope of their agency, service and/or employment with Defendant and does substantial and systematic business in Lackawanna, Luzerne, Carbon, and/or Philadelphia Counties.

10. Defendant, John Doe Distributor 2, is a corporation or other jural entity authorized to do business in the State of Pennsylvania distributing airbags and/or component parts and at the time of this incident was acting individually and/or through it/his/hers/their agents, servants and/or employees, who were acting within the course and scope of their agency, service and/or employment with Defendant and does substantial and systematic business in Lackawanna, Luzerne, Carbon, and/or Philadelphia Counties.

11. Defendant, John Doe Dealership, is a corporation or other jural entity authorized to do business in the State of Pennsylvania buying, selling, and leasing vehicles and at the time of this incident was acting individually and/or through it/his/hers/their agents, servants and/or employees, who were acting within the course and scope of their agency, service and/or employment with Defendant and does substantial and systematic business in Lackawanna, Luzerne, Carbon, and/or Philadelphia Counties.

12. Defendants, Hyundai Motor America, Hyundai Motor America Corporation, Hyundai Motor America Corporation, John Doe Manufacturer 1, John Doe Manufacturer 2, John Doe Distributor 1, John Doe Distributor 2, and John Doe Dealership is now, and at all times relevant to this Complaint in the business of designing, manufacturing, constructing, assembling, inspecting, and buying/selling automobiles, airbags, inflators, and components including and/or sold in the 2005 Hyundai Elantra Plaintiff was operating on or about June 9, 2015, which was defective and caused serious injury to Plaintiff.

13. On or about June 9, 2015, Plaintiff was the driver of the 2005 Hyundai Elantra in which airbags failed to deploy after said vehicle struck a tree causing serious injuries to Plaintiff.

14. On that same date, Plaintiff was injured when a product, namely the 2005 Hyundai Elantra, designed, manufactured, distributed, maintained and sold by Defendants malfunctioned.

15. On that same date, Plaintiff sustained injuries, including but not limited to her face, teeth, and brain requiring surgery to repair.

16. Defendants failed to properly inspect and maintain the aforementioned 2005 Hyundai Elantra and/or air bag system.

17. Defendants filed to properly design and manufacture the 2005 Hyundai Elantra and/or air bag system.

18. The aforementioned failure to properly inspect and maintain rendered the 2005 Hyundai Elantra and/or air bag system severely dangerous and potentially deadly.

19. All Defendants failed to safely distribute and sell the 2005 Hyundai Elantra and/or air bag system.

20. Any and all modifications and alterations were made by Defendants with the intention of prioritizing profits over the safety of the operators of the vehicle and/or air bag system.

21. The aforementioned failure to properly inspect and maintain by the Defendants allowed operators and passengers of the vehicle to be placed in a severely dangerous and potentially deadly situation.

22. As a result of the failure to properly inspect and maintain, Plaintiff, who was operating the 2005 Hyundai Elantra, was caused to sustain injuries including but not limited to her teeth, face, and brain all of which ultimately required surgeries.

23. The negligence, negligence per se, carelessness, recklessness and/or willful and wanton misconduct of Defendants directly and proximately caused severe injuries to Plaintiff.

24. The negligence, negligence per se, carelessness, recklessness and/or willful and wanton misconduct of Defendants directly and proximately caused Plaintiff to suffer injuries that preclude her from enjoying the pleasures of life, participating in activities and avocations.

25. Plaintiff did not expect the 2005 Hyundai Elantra's airbag system would not deploy if the vehicle sustained frontal damage/impact.

26. The aforementioned failure to properly inspect and maintain rendered the 2005 Hyundai Elantra's and/or airbag system severely dangerous and potentially deadly.

27. Defendants failed to safely distribute and sell the 2005 Hyundai Elantra and/or airbag system.

28. Any and all modifications and alterations were made by Defendants with the intention of prioritizing profits over the safety of the operators of the vehicle.

29. At the time the 2005 Hyundai Elantra and/or airbag system in question was introduced into the stream of commerce, it contained an airbag design defect that permitted the Plaintiff to be injured upon impact such as this when she should otherwise have been protected from serious injury.

30. This defect rendered 2005 Hyundai Elantra and/or airbag system unreasonably

dangerous as designed, taking into consideration the utility of the airbag design and the injury risks involved with its failure to provide adequate protection in an impact collision.

31. Safer alternative airbag designs existed which, in all reasonable probability, would have prevented or significantly reduced the risk of serious injury, which alternative designs would not have substantially impaired the vehicle's utility, and which were economically and technologically feasible at the time the subject vehicle left the control of the Defendants by the application of existing or reasonably achievable scientific knowledge.

32. Defendants failed to provide any warning of the possibility that the 2005 Hyundai Elantra and/or airbag system may not function as intended upon impact, which risk was known, or by the application of reasonably developed human skill and foresight should have been known, to the Defendants.

33. This failure rendered the 2005 Hyundai Elantra and/or airbag system unreasonably dangerous as marketed.

34. Defendants are jointly liable under the doctrine of strict liability in tort for any airbag system defects arising out of the design, manufacture or marketing of the 2005 Hyundai Elantra and/or airbag system to the extent said airbag design defect was a producing cause of the injuries in question and the Plaintiffs' subsequent damages.

35. Defendants are liable for the unreasonably dangerous and defective systems in the subject 2005 Hyundai Elantra and/or airbag system because of its distribution and sale of that vehicle.

36. The Defendants had actual knowledge of the dangers of poorly designed airbag system

for some segments of foreseeable drivers of the 2005 Hyundai Elantra at the time the vehicle was put into the market.

37. The negligence, negligence per se, carelessness, recklessness and/or willful and wanton misconduct of Defendants directly and proximately caused Plaintiff to incur substantial medical and expenses.

38. The negligence, negligence per se, carelessness, recklessness and/or willful and wanton misconduct of Defendants directly and proximately caused Plaintiffs to suffer wage loss and lost earning capacity.

39. The injuries suffered by Plaintiff are the direct and proximate result of the negligence, negligence per se, carelessness, recklessness and/or willful and wanton misconduct of all defendants, jointly and severally, including their owners, agents, servants and/or employees

## COUNT I-NEGLIGENCE

### Christy Kostro and Michael Kostro v. Hyundai Motor America, Hyundai Motor American Corporation, and Hyundai Motor Company

40. Paragraphs 1-39 as well as all paragraphs in the complaint are incorporated herein by reference as if fully set forth herein at length.

41. At all times relevant to this Complaint, Defendants so negligently, carelessly and recklessly designed, manufactured, constructed, assembled, inspected, distributed and sold the 2005 Hyundai Elantra and/or airbag system that it was dangerous and unsafe for its intended uses.

42. At all times relevant to this Complaint, Defendants had a duty to warn consumers including Plaintiff, regarding the dangers the airbags possessed including that upon frontal impact the airbags would not deploy.

43. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to use due care under the circumstances.

44. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to not place Plaintiff at risk of harm through their actions or inactions.

45. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to have their equipment, vehicle, and the like under such control that they would not cause injury, to any person, including Plaintiff.

46. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to only allow a person who was competent to use and/or have access to dangerous equipment, vehicle and the like.

47. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to only hire employees who are properly trained to make alterations and modifications to the equipment, vehicle and the like.

48. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to have policies and procedures in place to be sure the equipment, vehicle and the like were to be used in an appropriate manner.

49. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to train their employees and supervisors.

50. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to follow all policies and procedure set up by Defendants and co-Defendants and which would protect Plaintiff.

51. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to have written policies and/or procedures which require its employees or any persons to not make modifications and alterations to the equipment/vehicle.

52. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to have followed all written and/or other Corporation policies and/or procedures.

53. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to have policies and procedures in place to make sure its employees had the type and kind of license and training to use or not have access to the equipment/vehicle used in this incident.

54. The aforesaid incident was due solely to the negligent conduct, careless conduct and/or reckless and/or wanton and/or willful misconduct and/or outrageous and/or intentional conduct of Defendants and in no way due to any negligent act or failure to act on the part of the Plaintiff.

55. The negligent conduct, careless conduct and/or reckless and/or wanton and/or willful misconduct and/or outrageous and/or intentional conduct of Defendants consisted of the following:

a. Being inattentive and failing to maintain a sharp lookout for defects, options and/or conditions;
b. Failure to use due care under the circumstances;
c. Placing Plaintiff at risk of harm through their actions or inactions;
d. Failure to only hire employees who would inspect and or use the equipment/vehicle in a safe, prudent and/or appropriate manner;
e. Failure to have policies and procedures in place to be sure its employees were qualified to make modifications/alterations to the equipment/vehicle;
f. Failure to have policies and procedures in place but not limited to make sure the Defendants complied with all rules and applicable laws and regulations;
g. Failure to adequately train and/or continue to train/update employees/co-defendants;
h. Failure to abide by the duties owed to Plaintiff delineated in this Complaint but not limited to paragraphs 1-49;
i. Failure to not follow Defendants' policies and procedures;
j. Placing Plaintiff, at risk of harm through Defendant's actions and inaction;
k. Failing to be continuously alert;
l. Failure to properly observe the situation;
m. Failure to abide by/follow any duties owed to Plaintiff including those set forth herein this Complaint;
n. Failure to ensure policies and procedures were in place to safely perform maintenance or other tasks on the 2005 Hyundai Elantra and/or airbag system;
o. Failure to perform training;
p. Failure to follow any/all applicable government regulations;

q. Failure to provide the vehicle was in good working condition, free from defects and/or alterations;

r. Failure to equip the vehicle involved with appropriate and necessary safety devices;

s. Failure to hire qualified persons to inspect and maintain the vehicle in question.

56. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to make sure that any equipment/vehicle could be utilized in a safe manner to avoid the incident with the Plaintiffs person.

57. Defendant breached its duty to warn Plaintiff about the dangers in its 2005 Hyundai Elantra and/or airbag system including that the airbags would not deploy after frontal impact/damage.

58. The June 9, 2015, incident referred to above was directly and proximately caused by the negligence, carelessness and recklessness of some and/or all of the Defendants.

59. The June 9, 2015, incident referred to above was directly and proximately caused by the negligence, carelessness and recklessness of co-Defendants' who failed to properly maintain, repair and inspect the equipment, vehicle and the like.

60. As a result of the above-stated acts and omissions, Plaintiff, suffered such harm as has been previously stated herein, including but not limited to unimaginable pain while her head/face impacted with the vehicle causing injuries including, but not limited to, her head, face, and teeth all of which required surgeries to repair.

61. As a result of the aforesaid incident and injuries sustained, Plaintiffs, have incurred, yet incur and will/may incur various costs and expenses.

62. As a result of the aforesaid incident and injuries sustained, Plaintiffs, have been, are and will/may for an indefinite time in the future be forced to forego the pleasures of life.

63. As a result of the aforesaid accident and injuries sustained, Plaintiff, has suffered, yet suffer and will/may for an indefinite time in the future physical pain, mental anguish, scaring, and humiliation.

64. As a result of the aforesaid incident and injuries sustained, Plaintiff, has suffered, yet suffer and will/may for an indefinite time in the future wage loss and/or loss of earning capacity.

65. As a result of the aforesaid accident and injuries sustained, Plaintiff, has been forced to undergo hospitalization, surgeries, and medical treatment.

66. As a result of the aforesaid accident and injuries sustained, Plaintiff, has expended, various and substantial sums of money for the medicine and medical attention in and above endeavoring to treat and cure themselves of their injuries all to their great financial loss and damage.

**WHEREFORE,** Plaintiffs requests this Honorable Court grant judgment in their favor and against the Defendants, in a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars together with compensatory damages, punitive damages, interest, cost of suit, attorneys' fees and any such relief as this Honorable Court deems equitable, just, and proper.

**COUNT II-NEGLIGENCE**

**Christy Kostro and Michael Kostro v. John Doe Company 1, John Doe Company 2, John Doe Company 3, John Doe Company 4, and John Doe Company 5**

67. Paragraphs 1-66 as well as all paragraphs in the Complaint are incorporated herein by reference as if fully set forth herein at length.

68. At all times relevant to this complaint, Defendants John Doe Manufacturer 1, John Doe Manufacturer 2, John Doe Distributor 1, John Doe Distributor 2, and John Doe Dealership so negligently and carelessly inspected, maintained, installed, and sold the automobile, airbags, and inflators that it was dangerous and unsafe for its intended uses.

69. At all times relevant to this Complaint, Defendants had a duty to warn consumers including Plaintiff, regarding the dangers in its automobile, airbag system, and inflators system including that the airbags would not deploy upon frontal impact/damage.

70. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to use due care under the circumstances.

71. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to not place Plaintiff at risk of harm through their actions or inactions.

72. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to have their equipment, vehicle, and the like under such control that they would not cause injury, to any person, including Plaintiff.

73. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to only allow a person who was competent to use and/or have access to dangerous equipment, vehicle and the like.

74. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to only hire employees who are properly trained to make alterations and modifications to the equipment, vehicle and the like.

75. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to have policies and procedures in place to be sure the equipment, vehicle and the like were to be used in an appropriate manner.

76. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to train their employees and supervisors.

77. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to follow all policies and procedure set up by Defendants and co-Defendants and which would protect Plaintiff.

78. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to have written policies and/or procedures which require its employees or any persons to not make modifications and alterations to the equipment/vehicle.

79. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to have followed all written and/or other Corporation policies and/or procedures.

80. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to have policies and procedures in place to make sure its employees had the type and kind of license and training to use or not have access to the equipment/vehicle used in this incident.

81. The aforesaid accident was due solely to the negligent conduct, careless conduct and/or reckless and/or wanton and/or willful misconduct and/or outrageous and/or intentional

conduct of Defendants and in no way due to any negligent act or failure to act on the part of the Plaintiff

82. The negligent conduct, careless conduct and/or reckless and/or wanton and/or willful misconduct and/or outrageous and/or intentional conduct of Defendants consisted of the following:

a) Being inattentive and failing to maintain a sharp lookout for defects, options and/or conditions;
b) Failure to use due care under the circumstances;
c) Placing Plaintiff at risk of harm through their actions or inactions;
d) Failure to only hire employees who would inspect and or use the equipment/vehicle in a safe, prudent and/or appropriate manner;
e) Failure to have policies and procedures in place to be sure its employees were qualified to make modifications/alterations to the equipment/vehicle;
f) Failure to have policies and procedures in place but not limited to make sure the Defendants complied with all rules and applicable laws and regulations;
g) Failure to adequately train and/or continue to train/update employees/co-Defendants;
h) Failure to abide by the duties owed to Plaintiff delineated in this Complaint but not limited to paragraphs 1-76;
i) Failure to not follow Defendants' policies and procedures;
j) Placing Plaintiff, at risk of harm through Defendant's actions and inaction;
k) Failing to be continuously alert;
l) Failure to properly observe the situation;
m) Failure to abide by/follow any duties owed to Plaintiff including those set forth herein this complaint;
n) Failure to ensure policies and procedures were in place to safely perform maintenance or other tasks on the 2005 Hyundai Elantra and/or airbag system, automobile, airbags, and/or inflators.
o) Failure to perform training;
p) Failure to follow any/all applicable government regulations;
q) Failure to provide vehicle that was in good working condition, free from defects and/or alterations;

r) Failure to equip the vehicle involved with appropriate and necessary safety devices;

s) Failure to hire qualified persons to inspect and maintain the vehicle in question.

83. On or about June 9, 2015, and at all times relevant and material hereto, all Defendants owed to Plaintiff, a duty to make sure that any equipment/vehicle could be utilized in a safe manner to avoid the incident with the Plaintiffs person.

84. Defendants breached its duty to warn plaintiff about the dangers in its 2005 Hyundai Elantra and/or airbag system, automobile, airbags, and/or inflators including that upon frontal impact/damage the airbags would not deploy.

85. The June 9, 2015, incident referred to above was directly and proximately caused by the negligence, carelessness and recklessness of some and/or all of the Defendants.

86. The June 9, 2015, incident referred to above was directly and proximately caused by the negligence, carelessness and recklessness of co-Defendants' who failed to properly maintain, repair and inspect the equipment, vehicle and the like.

87. As a result of the above-stated acts and omissions, Plaintiff, suffered such harm as has been previously stated herein, including but not limited to unimaginable pain while her face, head, and teeth were being crushed by the vehicle.

88. As a result of the aforesaid accident and injuries sustained, Plaintiff, have incurred, yet incur and will/may incur various costs and expenses.

89. As a result of the aforesaid accident and injuries sustained, Plaintiff, has been, are and will/may for an indefinite time in the future be forced to forego the pleasures of life.

90. As a result of the aforesaid accident and injuries sustained, Plaintiff, has suffered, yet suffer and will/may for an indefinite time in the future physical pain, scarring, mental anguish and humiliation.

91. As a result of the aforesaid accident and injuries sustained, Plaintiff, has suffered, yet suffer and will/may for an indefinite time in the future wage loss and/or loss of earning capacity.

92. As a result of the aforesaid accident and injuries sustained, Plaintiff, has been forced to undergo hospitalization, surgeries, and medical treatment.

93. As a result of the aforesaid accident and injuries sustained, Plaintiff, has expended, various and substantial sums of money for the medicine and medical attention in and

above endeavoring to treat and cure themselves of their injuries all to his great financial loss and damage.

**WHEREFORE,** Plaintiffs requests this Honorable Court grant judgment in their favor and against the Defendants, in a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars together with compensatory damages, punitive damages, interest, cost of suit, attorneys' fees and any such relief as this Honorable Court deems equitable, just, and proper.

**COUNT III—PRODUCTS LIABILITY –NEGLIGENCE AND/OR STRICT LIABILITY FOR DEFECTIVE DESIGN, MANUFACTURING, AND MARKETING**

**Christy Kostro and Michael Kostro v. Hyundai Motor America, Hyundai Motor American Corporation, and Hyundai Motor Company**

94. Paragraphs 1-93 as well as all paragraphs in the Complaint are incorporated herein by reference as if fully set forth herein at length.

95. On or about June 9, 2015, Plaintiff was operating a 2005 Hyundai Elantra and/or airbag system designed, manufactured and sold by Defendants.

96. The subject 2005 Hyundai Elantra and/or airbag system had been owned and/or leased by Defendants.

97. The risks of the airbags not deploying upon frontal impact/damage were greater than a reasonable driver, such as Plaintiff, expected.

98. When this 2005 Hyundai Elantra sustained frontal impact/damage that did not result in airbag system deployment was unexpected and uncontemplated by the Plaintiff, the community, and any ordinary person.

99. This defect violated Plaintiff's expectations of safety and functionality, as no other vehicles being sold are able to sustain such extensive frontal damage/impact without airbag deployment.

100. Plaintiff avers that there are alternative, reasonable designs available, among Defendants' own products and those of other car companies and that Defendants placed profit before consumers in the creation of this automobile, airbags, and inflation systems.

101. The danger posed by the failure of these systems was unknowable and unaccepted to the average ordinary consumer, including Plaintiff.

102. A reasonable person, including Plaintiff, would conclude that the probability and seriousness of harm caused by the product outweigh the burden and/or costs of taking precautions.

103. The above mentioned equipment is operated in part by a series of parts which control the vehicle/airbags including but not limited to the defective airbags and/or inflators that malfunctioned allowing for frontal impact/damage without airbag deployment, causing the vehicle to seriously injure Plaintiff.

104. The 2005 Hyundai Elantra and/or airbag system contained the defects in the aforementioned systems when it left the control of Defendants.

105. At all times relevant hereto, Defendants owed a duty to provide a reasonably safe vehicle for Plaintiff to operate.

106. At all times material and relevant hereto, the vehicle, upon leaving the control of the manufacturer and/or sold by Defendants was defective, or in a condition not contemplated by the consumer which made the vehicle unreasonably dangerous or not in a safe condition for use by the consumer.

107. The 2005 Hyundai Elantra and/or airbag system deviated from the normal standards of the industry whereby the airbags or inflators would not operate upon substantial frontal impact/damage.

108. Plaintiff did not expect that upon frontal impact/damage the airbags would not deploy.

109. At all times material and relevant hereto, the vehicle, upon leaving the control of the manufacturer and/or sold by Defendants was not adequately and properly packaged lacking appropriate safeguards necessary to insure it would remain safe for a normal length of time.

110. At all times material and relevant hereto, the vehicle, upon leaving the control of the manufacturer and/or sold by Defendants did not contain all necessary directions,

instructions and warnings to enable the user to handle, install and/or use the vehicle and/or airbag system without causing harm and injury to the user or Plaintiff.

111. Defendants had a duty to make/market the product to the consumer without a substantial change in the condition which it was sold—free from a defective and unreasonably dangerous condition to the consumer.

112. At all times material and relevant hereto, the vehicle, upon leaving the control of the manufacturer and/or sold by Defendants was defective in that the vehicle differed from the manufacturers own standards or is different from like units of the same product line or did not perform as safely as the manufacturer intended or represented or did not perform as safely as a user reasonably expects or is led to believe the vehicle to perform.

113. At all times material and relevant hereto, the vehicle, upon leaving the control of the manufacturer and/or sold by Defendants was not designed so that it would be safe to be used in a manner and for the purpose for which it was intended as well as the manner and purpose an ordinary user would expect that it could be safely used or in a manner in which the manufacturer should anticipate that a user would expect the product could be safely used.

114. At all times relevant hereto, Defendants owed a duty to warn of any dangers and risks of injury when that product is used by a consumer in the manner and purpose for which the manufacturer and seller intended or had reason to believe it might be used or in a manner and purpose for which an ordinary person might believe it to be safe to use even though the manufacturer or seller did not intend or know it would be so used.

115. At all times relevant hereto, Defendants owed a duty to use reasonable care in designing, manufacturing and assembling products to insure that they are safe for the intended use and for any other use for which the products were made or sold or for which Defendants knew or should have known or foreseen might be made of the product.

116. At all times relevant hereto, Defendants owed a duty to make all necessary tests and inspections to insure that Defendant's products are not likely to cause injury or harm when being used.

117. At all times relevant hereto, Defendants owed a duty to warn or otherwise inform others of any condition, use or circumstance involving the products that might cause injury of which he knew or should have known at the time the products were made or sold or of which he later became aware or should have become aware.

118. At all times relevant hereto, Defendants owed a duty to take action to be certain Defendants' products may be used safely.

119. At all times relevant hereto, Defendants owed a duty to manufacture and sell a product that embodies the most feasible design and safety devices and to employ the design and to utilize the safety devices which could have reasonably made the product less hazardous.

120. At all times relevant hereto, Defendants who sell a product manufactured by another has the same duties as the manufacturer of the product.

121. At all times relevant hereto, Defendants whether a wholesaler, retailer, supplier or distributor owed a duty to inspect or test a product manufactured by another where inspection would disclose dangers to the ultimate user of the product.

122. At all times relevant hereto, Defendants whether a wholesaler, retailer, supplier or distributor owed a duty to warn the buyer of such product risks or dangers that may be encountered in the use of the product.

123. At all times relevant hereto, Defendants whether a manufacturer, wholesaler, retailer, supplier or distributor owed a duty to insure the product would conform to any statement, affirmation of fact or any promise made regarding the product, description of the product or a sample or model of the product.

124. At all times relevant hereto, Defendants owed a duty to provide adequate warnings.

125. At all times relevant hereto, Defendants owed a duty to provide adequate safety guards

126. At all times relevant hereto, Defendants owed a duty to properly and adequately design the vehicle, airbag system, and inflators in a safe and reasonable manner

127. At all times relevant hereto, Defendants owed a duty to provide protection so that persons using the vehicle would not be injured.

128. At all times relevant hereto, Defendants owed a duty to properly manufacture the subject product, such that it was free from defects and/or variations from design specifications.

129. The negligent conduct, careless conduct and/or reckless and/or wanton and/or willful misconduct and/or outrageous and/or intentional conduct of Defendants consisted of the following:

a) Failure to have adequate warnings;

b) Failure to adequately detail dangers and procedures in its manual;

c) Breaching the duties including, but not limited to, all paragraphs delineated in this Complaint;

d) Failure to conform to the manufacturer's own standards for like units;

e) Failure to design said vehicle, airbag system, and/or inflators such that it would be safe for its intended and foreseeable use;

f) Failure to design said vehicle, airbag system, and/or inflators such that it would be safe for its advertised, warranted and or promised capabilities;

g) Failure to test and inspect products to insure that the products were not likely to cause harm;

h) Failure to provide training videos or manuals to insure safe use of Defendants' products;

i) Failure to provide adequate and/or accurate tolerances for the vehicle's capabilities;

j) Failure to test or inspect finished product;

k) Failure to test or inspect installed finished product on advertised vehicle fitment;

l) Failure to provide a complete and accurate troubleshooting script relative the product;

m) Failure to conduct feasibility studies for safer design;

n) Failure to warn of dangers of exceeding the advertised capabilities of the product;

o) Failure to utilize alternative designs to safeguard users from dangers known or which should have been known to Defendants;

p) Failure to utilize alternative designs to safeguard users from dangers to users which were foreseeable to Defendants;

q) Failure to adhere to the duties delineated herein.

130. The subject vehicle, airbag system, and/or inflators did not have any and/or sufficient warnings or instructions for installers of the product.

131. Defendants participated in sale and maintenance of a product.

132. Defendants maintained, installed and assembled the product which contained a defective condition because the design was defective and unsafe.

133. This design defect made the product unreasonably dangerous.

134. The system as assembled by Defendants remained unchanged and was in the same condition at the time of the injury hereafter alleged.

135. As a direct and proximate cause of Defendants' installation and maintenance of the defectively designed product, Plaintiff sustained permanent injury.

136. The defects in the 2005 Hyundai Elantra and/or airbag system caused the injuries to the Plaintiff.

137. Because of the lack of warnings or instructions Plaintiff was unaware of the dangers of the product.

138. Given the lack of warnings or instructions it was entirely foreseeable that an operator of a vehicle with the "defective airbag system" installed would cause injury.

139. Given the design of the equipment and/or lack of warnings, it was not apparent that a person in the position of Plaintiff was not intended to operate or attempt to operate the vehicle with the vehicle installed in the manner that he attempted to do so.

140. The subject equipment was improperly designed and constructed, such that persons operating the vehicle with the vehicle installed could easily be injured through the product failure.

141. Multiple alternative designs existed that would have prevented an individual operating the vehicle with the airbag system installed from being injured.

142. Such alternative designs were feasible, available, and have required either no extra or minimal extra cost in manufacturing and designing the equipment.

143. Such alternative designs were necessary given the obvious dangers of airbag system failure to deploy upon frontal impact/damage.

144. As a result of a lack of instructions, warnings, proper manufacturing and/or proper design of the vehicle, Plaintiff suffered extreme physical pain and suffering, injuries and surgeries.

145. As a sole and direct result of Defendants violating the duties and breaches stated within this Complaint as well as its actions and inactions, jointly, severally and through the actions and inactions of its servants, agents, workmen and employees, and co-Defendants they caused the injuries to Plaintiff.

146. As a result of the aforesaid accident and injuries sustained, Plaintiff has incurred, yet incur and will/may incur various costs and expenses.

147. As a result of the aforesaid accident and injuries sustained, Plaintiff has been, is and will for an indefinite time in the future be forced to forego the pleasures of life and loss of companionship.

148. As a result of the aforesaid accident and injuries sustained, Plaintiff, has suffered, for an indefinite time in the future physical pain, scarring, and mental anguish.

149. As a result of the aforesaid accident and injuries sustained, Plaintiff, will suffer from a loss of wages and earning capacity.

**WHEREFORE,** Plaintiffs requests this Honorable Court grant judgment in their favor and against the Defendants, in a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars

together with compensatory damages, punitive damages, interest, cost of suit, attorneys' fees and any such relief as this Honorable Court deems equitable, just, and proper.

## COUNT IV—PRODUCTS LIABILITY –NEGLIGENCE AND/OR STRICT LIABILITY FOR DEFECTIVE DESIGN, MANUFACTURING, AND MARKETING

**Christy Kostro and Michael Kostro v. John Doe Manufacturer 1, John Doe Manufacturer 2, John Doe Distributor 1, John Doe Distributor 2, and John Doe Dealership**

150. Paragraphs 1-149 as well as all paragraphs in the Complaint are incorporated herein by reference as if fully set forth herein at length.

151. On or about June 9, 2015, Plaintiff was operating a 2005 Hyundai Elantra the airbag system of which were designed, manufactured and/or sold by Defendants.

152. The airbag system of the subject 2005 Hyundai Elantra had been owned and/or leased by Defendants.

153. The risks of the airbags not deploying upon frontal impact/damage were greater than a reasonable driver, such as Plaintiff, expected.

154. When this 2005 Hyundai Elantra sustained frontal impact/damage that did not result in airbag deployment was unexpected and uncontemplated by the Plaintiff, the community, and any ordinary person.

155. This defect violated Plaintiff's expectations of safety and functionality, as no other vehicles being sold are able to sustain such extensive frontal damage/impact without airbag deployment.

156. Plaintiff avers that there are alternative, reasonable designs available, among Defendants' own products and those of other car companies and that Defendants placed profit before consumers in the creation of this automobile, airbag system, and inflation systems.

157. The danger posed by the failure of these systems was unknowable and unaccepted to the average ordinary consumer, including Plaintiff.

158. A reasonable person, including Plaintiff, would conclude that the probability and seriousness of harm caused by the product outweigh the burden and/or costs of taking precautions.

159. The above mentioned equipment is operated in part by a series of parts which control the vehicle/airbags including but not limited to the defective airbag system that malfunctioned allowing for frontal impact/damage without airbag deployment, causing the vehicle to seriously injure Plaintiff.

160. The 2005 Hyundai Elantra contained the defects in the aforementioned systems when it left the control of Defendants.

161. At all times relevant hereto, Defendants owed a duty to provide a reasonably safe vehicle for Plaintiff to operate.

162. At all times material and relevant hereto, the vehicle, upon leaving the control of the manufacturer and/or sold by Defendants was defective, or in a condition not contemplated by the consumer which made the vehicle unreasonably dangerous or not in a safe condition for use by the consumer.

163. The 2005 Hyundai Elantra and/or airbag system deviated from the normal standards of the industry whereby the airbag system would not operate upon substantial frontal impact/damage.

164. Plaintiff did not expect that upon frontal impact/damage the airbag system would not deploy.

165. At all times material and relevant hereto, the vehicle, upon leaving the control of the manufacturer and/or sold by Defendants was not adequately and properly packaged lacking appropriate safeguards necessary to insure it would remain safe for a normal length of time.

166. At all times material and relevant hereto, the vehicle, upon leaving the control of the manufacturer and/or sold by Defendants did not contain all necessary directions, instructions and warnings to enable the user to handle, install and/or use the vehicle without causing harm and injury to the user or Plaintiff.

167. Defendants had a duty to make/market the product to the consumer without a substantial change in the condition which it was sold—free from a defective and unreasonably dangerous condition to the consumer.

168. At all times material and relevant hereto, the vehicle and/or airbag system, upon leaving the control of the manufacturer and/or sold by Defendants was defective in that the vehicle differed from the manufacturers own standards or is different from like units of the same product line or did not perform as safely as the manufacturer intended or represented or did not perform as safely as a user reasonably expects or is led to believe the vehicle to perform.

169. At all times material and relevant hereto, the vehicle and/or airbag system, upon leaving the control of the manufacturer and/or sold by Defendants was not designed so that it would be safe to be used in a manner and for the purpose for which it was intended as well as the manner and purpose an ordinary user would expect that it could be safely used or in a manner in which the manufacturer should anticipate that a user would expect the product could be safely used.

170. At all times relevant hereto, Defendants owed a duty to warn of any dangers and risks of injury when that product is used by a consumer in the manner and purpose for which the manufacturer and seller intended or had reason to believe it might be used or in a manner and purpose for which an ordinary person might believe it to be safe to use even though the manufacturer or seller did not intend or know it would be so used.

171. At all times relevant hereto, Defendants owed a duty to use reasonable care in designing, manufacturing and assembling products to insure that they are safe for the intended use and for any other use for which the products were made or sold or for

which Defendants knew or should have known or foreseen might be made of the product.

172. At all times relevant hereto, Defendants owed a duty to make all necessary tests and inspections to insure that Defendant's products are not likely to cause injury or harm when being used.

173. At all times relevant hereto, Defendants owed a duty to warn or otherwise inform others of any condition, use or circumstance involving the products that might cause injury of which he knew or should have known at the time the products were made or sold or of which he later became aware or should have become aware.

174. At all times relevant hereto, Defendants owed a duty to take action to be certain Defendants' products may be used safely.

175. At all times relevant hereto, Defendants owed a duty to manufacture and sell a product that embodies the most feasible design and safety devices and to employ the design and to utilize the safety devices which could have reasonably made the product less hazardous.

176. At all times relevant hereto, Defendants who sell a product manufactured by another has the same duties as the manufacturer of the product.

177. At all times relevant hereto, Defendants whether a wholesaler, retailer, supplier or distributor owed a duty to inspect or test a product manufactured by another where inspection would disclose dangers to the ultimate user of the product.

178. At all times relevant hereto, Defendants whether a wholesaler, retailer, supplier or distributor owed a duty to warn the buyer of such product risks or dangers that may be encountered in the use of the product.

179. At all times relevant hereto, Defendants whether a manufacturer, wholesaler, retailer, supplier or distributor owed a duty to insure the product would conform to any statement, affirmation of fact or any promise made regarding the product, description of the product or a sample or model of the product.

180. At all times relevant hereto, Defendants owed a duty to provide adequate warnings.

181. At all times relevant hereto, Defendants owed a duty to provide adequate safety guards

182. At all times relevant hereto, Defendants owed a duty to properly and adequately design the vehicle, airbag system, and inflators in a safe and reasonable manner

183. At all times relevant hereto, Defendants owed a duty to provide protection so that persons using the vehicle would not be injured.

184. At all times relevant hereto, Defendants owed a duty to properly manufacture the subject product, such that it was free from defects and/or variations from design specifications.

185. The negligent conduct, careless conduct and/or reckless and/or wanton and/or willful misconduct and/or outrageous and/or intentional conduct of Defendants consisted of the following:

a) Failure to have adequate warnings;

b) Failure to adequately detail dangers and procedures in its manual;

c) Breaching the duties including, but not limited to, all paragraphs delineated in this Complaint;

d) Failure to conform to the manufacturer's own standards for like units;

e) Failure to design said vehicle, and/or airbag system such that it would be safe for its intended and foreseeable use;

f) Failure to design said vehicle, airbag system, and/or inflators such that it would be safe for its advertised, warranted and or promised capabilities;

g) Failure to test and inspect products to insure that the products were not likely to cause harm;

h) Failure to provide training videos or manuals to insure safe use of Defendants' products;

i) Failure to provide adequate and/or accurate tolerances for the vehicle's capabilities;

j) Failure to test or inspect finished product;

k) Failure to test or inspect installed finished product on advertised vehicle fitment;

l) Failure to provide a complete and accurate troubleshooting script relative the product;

m) Failure to conduct feasibility studies for safer design;

n) Failure to warn of dangers of exceeding the advertised capabilities of the product;

o) Failure to utilize alternative designs to safeguard users from dangers known or which should have been known to Defendants;

p) Failure to utilize alternative designs to safeguard users from dangers to users which were foreseeable to Defendants;

q) Failure to adhere to the duties delineated herein.

186. The subject vehicle, airbag system, and/or inflators did not have any and/or sufficient warnings or instructions for installers of the product.

187. Defendants participated in sale and maintenance of a product.

188. Defendants maintained, installed and assembled the product which contained a defective condition because the design was defective and unsafe.

189. This design defect made the product unreasonably dangerous.

190. The system as assembled by Defendants remained unchanged and was in the same condition at the time of the injury hereafter alleged.

191. As a direct and proximate cause of Defendants' installation and maintenance of the defectively designed product, Plaintiff sustained permanent injury.

192. The defects in the 2005 Hyundai Elantra and/or airbag system caused the injuries to the Plaintiff.

193. Because of the lack of warnings or instructions Plaintiff was unaware of the dangers of the product.

194. Given the lack of warnings or instructions it was entirely foreseeable that an operator of a vehicle with the "defective airbag system" installed would cause injury.

195. Given the design of the equipment and/or lack of warnings, it was not apparent that a person in the position of Plaintiff was not intended to operate or attempt to operate the vehicle with the vehicle installed in the manner that he attempted to do so.

196. The subject equipment was improperly designed and constructed, such that persons operating the vehicle with the vehicle installed could easily be injured through the product failure.

197. Multiple alternative designs existed that would have prevented an individual operating the vehicle with the airbag system installed from being injured.

198. Such alternative designs were feasible, available, and have required either no extra or minimal extra cost in manufacturing and designing the equipment.

199. Such alternative designs were necessary given the obvious dangers of airbag system failure to deploy upon frontal impact/damage.

200. As a result of a lack of instructions, warnings, proper manufacturing and/or proper design of the vehicle, Plaintiff suffered extreme physical pain and suffering, injuries and surgeries.

201. As a sole and direct result of Defendants violating the duties and breaches stated within this Complaint as well as its actions and inactions, jointly, severally and through the actions and inactions of its servants, agents, workmen and employees, and co-Defendants they caused the injuries to Plaintiff.

202. As a result of the aforesaid accident and injuries sustained, Plaintiff has incurred, yet incur and will/may incur various costs and expenses.

203. As a result of the aforesaid accident and injuries sustained, Plaintiff has been, is and will for an indefinite time in the future be forced to forego the pleasures of life and loss of companionship.

204. As a result of the aforesaid accident and injuries sustained, Plaintiff, has suffered, for an indefinite time in the future physical pain, scarring, and mental anguish.

205. As a result of the aforesaid accident and injuries sustained, Plaintiff, will suffer from a loss of wages and earning capacity.

**WHEREFORE,** Plaintiffs requests this Honorable Court grant judgment in their favor and against the Defendants, in a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars together with compensatory damages, punitive damages, interest, cost of suit, attorneys' fees and any such relief as this Honorable Court deems equitable, just, and proper.

## COUNT V –NEGLIGENT MAINTENANCE

**Christy Kostro and Michael Kostro v. Hyundai Motor America, Hyundai Motor American Corporation, and Hyundai Motor Company**

206. Paragraphs 1-205 as well as all paragraphs in the Complaint are incorporated herein by reference as if fully set forth herein at length.

207. Defendants built and/maintained vehicle, airbag system, inflation system(s) that had a defective design or was defectively maintained.

208. Accordingly, Defendants owed a duty to Plaintiff that the system and vehicle was designed and maintained in such a way that made the system and vehicle safe for its intended purpose.

209. The defect existed at the time the product left the manufacturer Defendants.

210. Defendants knew or should have known when building and maintaining this vehicle, airbag system, inflation system(s) that it was designed defectively or maintained, creating a unreasonable risk of injury for to Plaintiff.

211. Defendants were negligent in failing to properly design, manufacture, install, maintain, and communicate the defects in the system and vehicle to Plaintiff, creating a clear and immediate risk of serious injury.

212. As a direct and proximate result, Plaintiff sustained serious injuries when she used the vehicle as it was intended to be used.

**WHEREFORE,** Plaintiffs requests this Honorable Court grant judgment in their favor and against the Defendants, in a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars together with compensatory damages, punitive damages, interest, cost of suit, attorneys' fees and any such relief as this Honorable Court deems equitable, just, and proper.

## COUNT VI –NEGLIGENT MAINTENANCE

**Christy Kostro and Michael Kostro v. John Doe Manufacturer 1, John Doe Manufacturer 2, John Doe Distributor 1, John Doe Distributor 2, and John Doe Dealership**

213. Paragraphs 1-212 as well as all paragraphs in the Complaint are incorporated herein by reference as if fully set forth herein at length.

214. Defendants built and/maintained an airbag/inflation system(s) that had a defective design or was defectively maintained.

215. Accordingly, Defendants owed a duty to Plaintiff that the system was designed and maintained in such a way that made the system safe for its intended purpose.

216. The defect existed at the time the product left the manufacturer Defendants.

217. Defendants knew or should have known when building and maintaining this airbag/inflation system(s) that it was designed defectively or maintained, creating a unreasonable risk of injury for to Plaintiff.

218. Defendants were negligent in failing to properly design, manufacture, install, maintain, and communicate the defect in the system to Plaintiff, creating a clear and immediate risk of serious injury.

219. As a direct and proximate result, Plaintiff sustained serious injuries when she used the vehicle as it was intended to be used.

**WHEREFORE,** Plaintiffs requests this Honorable Court grant judgment in their favor and against the Defendants, in a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars together with compensatory damages, punitive damages, interest, cost of suit, attorneys' fees and any such relief as this Honorable Court deems equitable, just, and proper.

**COUNT VII –PRODUCT LIABILITY/MALFUNCTION**

**Christy Kostro and Michael Kostro v. Hyundai Motor America, Hyundai Motor American Corporation, and Hyundai Motor Company**

220. Paragraphs 1-219 as well as all paragraphs in the Complaint are incorporated herein by reference as if fully set forth herein at length.

221. Defendants built and/maintained a vehicle, airbag system, inflation system(s) that malfunctioned.

222. Defendants owed a duty to Plaintiff that the system and vehicle was designed and maintained in such a way that made the system and vehicle safe for its intended purpose.

223. The defect existed at the time the product and vehicle left the manufacturer Defendants possession/control.

224. The vehicle, airbag, inflation system(s) malfunctioned while Plaintiff operated the vehicle as intended, as the vehicle's airbags should have deployed upon substantial frontal impact/damage.

225. As a direct and proximate result, Plaintiff sustained serious injuries when she used the vehicle as it was intended to be used.

**WHEREFORE,** Plaintiffs requests this Honorable Court grant judgment in their favor and against the Defendants, in a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars together with compensatory damages, punitive damages, interest, cost of suit, attorneys' fees and any such relief as this Honorable Court deems equitable, just, and proper.

## COUNT VIII –PRODUCT LIABILITY/MALFUNCTION

**Christy Kostro and Michael Kostro v. John Doe Manufacturer 1, John Doe Manufacturer 2, John Doe Distributor 1, John Doe Distributor 2, and John Doe Dealership**

226. Paragraphs 1-225 as well as all paragraphs in the Complaint are incorporated herein by reference as if fully set forth herein at length.

227. Defendants built and/maintained an airbag/inflation system(s) that malfunctioned.

228. Defendants owed a duty to Plaintiff that the system was designed and maintained in such a way that made the system safe for its intended purpose.

229. The defect existed at the time the product left the manufacturer Defendants possession/control.

230. The airbag/inflation system(s) malfunctioned while Plaintiff operated the vehicle as intended, as the airbags should have deployed upon substantial frontal impact/damage.

231. As a direct and proximate result, Plaintiff sustained serious injury when she used the vehicle as it was intended to be used.

**WHEREFORE,** Plaintiffs requests this Honorable Court grant judgment in their favor and against the Defendants, in a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars together with compensatory damages, punitive damages, interest, cost of suit, attorneys' fees and any such relief as this Honorable Court deems equitable, just, and proper.

## COUNT IX—BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

**Christy Kostro and Michael Kostro v. Hyundai Motor America, Hyundai Motor American Corporation, and Hyundai Motor Company**

232. Paragraphs 1-231 and all other paragraphs are incorporated herein by reference as if fully set forth herein at length as well as the entire Complaint.

233. Plaintiff's use of the 2005 Hyundai Elantra and/or airbag system was accompanied by Defendants' implied warranty of merchantability.

234. Plaintiff expected to be able to use the vehicle for its ordinary purpose: driving, stopping, prevention of injuries upon impact, parking, and traveling safely.

235. The 2005 Hyundai Elantra and/or airbag system was not fit for its ordinary use, as it could not safely deploy airbags upon frontal impact/damage, so that any ordinary person would think the vehicle would do so for their protection when frontal impact/damage occurred.

236. The 2005 Hyundai Elantra and/or airbag system could not run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit, and among all units involved.

237. The 2005 Hyundai Elantra and/or airbag system did not conform to the promises and affirmations of fact made on the vehicle.

238. The implied warranty of merchantability means and includes that the goods will comply with each of the following requirements: (1) they would pass without objection in the trade under the contract description; (2) they are fit for the ordinary purposes for which such goods are used; (3) they are adequately contained, packaged, and labeled; and (4) they conform to the promises or affirmations of fact made on the container or label.

239. Because the 2005 Hyundai Elantra and/or airbag system was sold to Plaintiff with a serious airbag/inflation defect that manifested itself within the period of the implied warranty and which substantially reduces its safety and performance, it (1) would not pass without objection in the trade under the contract description, (2) was and is not fit

for the ordinary purposes for which such goods are used, (3) was not adequately contained, packaged, and labeled, and (4) did not conform to the promises or affirmations of fact made on the container or label.

240. Plaintiff has rightfully rejected and/or justifiably revoked acceptance of the 2005 Hyundai Elantra and/or airbag system, and is entitled to rescind the contract and to restitution of all money paid towards the contract. This Complaint also, again, hereby rejects and revokes acceptance of the 2005 Hyundai Elantra and/or airbag system.

241. Plaintiff has been damaged by Defendants violations and its failure to comply with its obligations under the implied warranty of merchantability.

**WHEREFORE,** Plaintiffs requests this Honorable Court grant judgment in their favor and against the Defendants, in a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars together with compensatory damages, punitive damages, interest, cost of suit, attorneys' fees and any such relief as this Honorable Court deems equitable, just, and proper.

**COUNT X—BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

**Christy Kostro and Michael Kostro v. John Doe Manufacturer 1, John Doe Manufacturer 2, John Doe Distributor 1, John Doe Distributor 2, and John Doe Dealership**

242. Paragraphs 1-241 and all other paragraphs are incorporated herein by reference as if fully set forth herein at length as well as the entire Complaint.

243. Plaintiff's use of the 2005 Hyundai Elantra and/or airbag system was accompanied by Defendants' implied warranty of merchantability.

244. Plaintiff expected to be able to use the vehicle, airbags, and inflators for its ordinary purpose: driving, stopping, prevention of injuries upon impact, parking, and traveling safely.

245. The 2005 Hyundai Elantra and/or airbag system was not fit for its ordinary use, as it could not safely deploy airbags upon frontal impact/damage, so that any ordinary person would think the vehicle would do so for their protection when frontal impact/damage occurred.

246. The 2005 Hyundai Elantra and/or airbag system could not run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit, and among all units involved.

247. The 2005 Hyundai Elantra and/or airbag system did not conform to the promises and affirmations of fact made on the vehicle.

248. The implied warranty of merchantability means and includes that the goods will comply with each of the following requirements: (1) they would pass without objection in the trade under the contract description; (2) they are fit for the ordinary purposes for which such goods are used; (3) they are adequately contained, packaged, and labeled; and (4) they conform to the promises or affirmations of fact made on the container or label.

249. Because the 2005 Hyundai Elantra and/or airbag system was sold to Plaintiff with a serious airbag/inflation defect that manifested itself within the period of the implied warranty and which substantially reduces its safety and performance, it (1) would not pass without objection in the trade under the contract description, (2) was and is not fit for the ordinary purposes for which such goods are used, (3) was not adequately contained, packaged, and labeled, and (4) did not conform to the promises or affirmations of fact made on the container or label.

250. Plaintiff has rightfully rejected and/or justifiably revoked acceptance of the 2005 Hyundai Elantra and/or airbag system, and is entitled to rescind the contract and to restitution of all money paid towards the contract. This Complaint also, again, hereby rejects and revokes acceptance of the 2005 Hyundai Elantra and/or airbag system.

251. Plaintiff has been damaged by Defendants violations and its failure to comply with its obligations under the implied warranty of merchantability.

**WHEREFORE,** Plaintiffs requests this Honorable Court grant judgment in their favor and against the Defendants, in a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars together with compensatory damages, punitive damages, interest, cost of suit, attorneys' fees and any such relief as this Honorable Court deems equitable, just, and proper.

## COUNT XI – LOSS OF CONSORTIUM

**Christy Kostro and Michael Kostro v. Hyundai Motor America, Hyundai Motor American Corporation, Hyundai Motor Company, John Doe Manufacturer 1, John Doe Manufacturer 2, John Doe Distributor 1, John Doe Distributor 2, and John Doe Dealership**

252. Paragraphs 1-251 and all other paragraphs are incorporated herein by reference as if fully set forth herein at length as well as the entire Complaint.

253. At all times pertinent hereto, Michael Kostro, was and is the husband of Plaintiff, Christy Kostro.

254. Plaintiff has incurred and will incur various expenses related to the injuries sustained by his wife.

255. Plaintiff, Michael Kostro, has suffered the loss of consortium, society, services, economic contributions, care, love, affection, and intimate relations of his wife as a

result of the aforementioned breaches of duties owed by Defendants and he will continue to suffer so for an indefinite time in the future.

**WHEREFORE,** Plaintiffs requests this Honorable Court grant judgment in their favor and against the Defendants, in a sum in excess of Seventy-Five Thousand ($75,000.00) Dollars together with compensatory damages, punitive damages, interest, cost of suit, attorneys' fees and any such relief as this Honorable Court deems equitable, just, and proper.

Respectfully submitted,
**PISANCHYN LAW FIRM**

By: ______________________
Michael J. Pisanchyn, Jr., Esquire
Attorney for Plaintiff
524 Spruce Street
Scranton, Pa 18503
(570) 344-1234

By: ______________________
Bradley D. Moyer, Esquire
Attorney for Plaintiff
524 Spruce Street
Scranton, Pa 18503
(570) 344-1234